UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| PALL CORPORATION, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>MYKROLIS CORPORATION, )<br>)<br>Defendant. )<br>) | Civil Action No. 04-CV-10887 GAO |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S
MOTION TO DISMISS**

Defendant Mykrolis Corporation ("Mykrolis") respectfully submits this memorandum of law in support of its Motion to Dismiss the Declaratory Judgment Complaint of Plaintiff Pall Corporation ("Pall").

**PRELIMINARY STATEMENT**

On the heels of the issuance of a preliminary injunction in <u>Mykrolis Corp. v. Pall Corp.</u>, Civil Action No. 03 CV 10392 GAO (the "First Action"), Pall--the defendant enjoined in that action--filed the present declaratory judgment action, involving the same patents, parties, and products. Indeed, the preliminary injunction issued in the First Action enjoins the very products that are specifically identified by Pall in the present action.

In the First Action, Mykrolis brought a Complaint on March 3, 2003, for infringement by Pall of Mykrolis's U.S. Patent Nos. 6,068,770 (the "'770 Patent") and 6,378,907 B1 (the "'907 Patent") (collectively, the "patents-in-suit"). In particular, Mykrolis alleged that Pall's fluid separation devices, including but not limited to the

9436303_1

PhotoKleen™ EZD-2 filter assembly, infringed these patents. On March 27, 2003, Pall answered the complaint and brought a counterclaim for a declaratory judgment that the patents-in-suit are invalid and that Pall's fluid separation devices do not infringe those patents. In this First Action, the Court has already held a Markman hearing, issued a decision on claim construction, and enjoined Pall from manufacturing, selling, offering for sale, or importing its EZD-2 products, as well as colorable imitations of these products. See April 30, 2004 Order (attached as Exhibit A).

The present action (the "Second Action"), like Pall's Counterclaim in the First Action, is for a declaratory judgment of noninfringment and invalidity of the patents-in-suit. There is no discernable difference between Pall's Counterclaim in the First Action and Pall's Second Action. The specific products that are the subject of the Second Action--the redesigned EZD-2 products (the EZD-New products")--are within the general class of Pall's fluid separation devices that are the subject of the Complaint and Counterclaim in the First Action. In other words, the First Action addresses all of the issues raised by the present action.[1]

Hence, the Second Action serves no useful purpose. It is an abuse of the spirit and intent of the Declaratory Judgment Act, wastes judicial resources, and is duplicative of the First Action. For these reasons, Mykrolis respectfully requests that this Court exercise its discretion under the Act to dismiss the Second Action.

---

[1] To the extent that the Court considers there to be additional issues in the Second Action for resolution, they are properly resolved through an amendment to the claims or counterclaim pending in the First Action.

## BACKGROUND

**The First Action**

Mykrolis commenced the First Action on March 3, 2003, alleging that Pall was making, using, selling, offering for sale, or importing "fluid separation devices, including, but not limited to, [Pall's] EZD PhotoKleen™ EZD-2 Filter Assembly," that infringe the patents-in-suit. See Ex. B (Compl. ¶¶ 9, 14). Mykrolis further alleged that "Pall is engaged in a systematic effort to infringe Mykrolis's patent rights, including rights under the ['770 and '907 ] Patent[s], by developing and fabricating the EZD-2 and other infringing products that replace products and components of Mykrolis." Id. at ¶¶ 10, 15.

Also on March 3, 2003, Mykrolis moved for a preliminary injunction, seeking to prevent the irreparable harm resulting from the manufacture, distribution, and importation of Pall's infringing fluid separation devices. Id. at ¶¶ C-E.

On March 27, 2003, Pall filed an Answer and Counterclaim for a declaratory judgment that its "fluid separation devices and/or manifold construction, including Pall's PhotoKleen™ EZD-2 Filter Assembly," do not infringe the patents-in-suit. See Ex. C (Answer & Counterclaim ¶¶ 12, 13 & 15). Pall also sought a declaration that the patents-in-suit were invalid. Id. at ¶¶ 14 &16.

On June 19, 2003, Mykrolis learned that Pall had made prototypes of a redesigned EZD-2 product and requested that Pall provide samples of these products. Pall refused, and on June 24, 2003, Mykrolis moved to compel production of information concerning the redesigned products so that Mykrolis could evaluate the redesign to determine whether it infringed. Pall opposed the motion on the ground that the redesign was merely a prototype that was not yet commercially introduced; Pall promised to inform Mykrolis

and the Court if and when the products were commercially available. On July 1, 2003, this Court denied Mykrolis's motion to compel. Pall did not inform the Court of the commercial availability of the products and, as discussed below, waited until February 2004 to provide Mykrolis with the EZD-New products, which Mykrolis then analyzed and determined to infringe the patents-in-suit.

On August 6-12, 2003, the Court held a hearing on Mykrolis's motion for a preliminary injunction and on claim construction. At that time, Pall did not inform the Court or Mykrolis whether the redesigned products had been introduced in the United States; nor did Pall provide any information on the results of its assessment of the commercial viability of the redesigned products.

By letter dated February 6, 2004, Pall's counsel informed Mykrolis that Pall was "phasing out" its EZD-2 manifolds and substituting the revised versions of the manifolds. Pall also provided Mykrolis with three samples of three types of redesigned products. These EZD-New products are identical in all material respects to the EZD-2 products, except that a portion of the locking mechanism has been modified. In particular, the EZD-New products eliminate the secondary safety button lock. Also, the EZD-New products modify a portion of the over-center locking mechanism. The horizontal slot has a slight downward jog at its end. Nonetheless, the EZD-New products perform the identical function as the EZD-2 products and the Mykrolis invention as claimed in the patents-in-suit--that is, they position the connector means on the separation module into fluid tight engagement with the connector means on the fluid connector member (or manifold), and they secure the separation module and fluid connector member in that position for fluid processing. In doing so, the EZD-New products, like the EZD-2

products and Mykrolis invention, seek to ensure that filter installation and change-out occur quickly, with minimal loss of fluid, without spillage, and without introduction of contaminant. See Ex. A at 14.

On March 8, 2004, Mykrolis informed Pall that these minor changes in the EZD-2 products did not render them non-infringing. Mykrolis also reminded Pall that the preliminary injunction motion (then pending before the Court) would cover the EZD-New products. Mykrolis further asked Pall to clarify what it meant by its statement that Pall was "phasing out" the EZD-2 products. On March 24, Pall represented that it has "ceased marketing the manifolds of the prior designs in the United States and has now commercially introduced into the United States the revised manifolds . . . ." On March 31, 2004, Mykrolis again informed Pall that the EZD-New products infringed the patents-in-suit and that the pending preliminary injunction motion covered these products. Pall did not respond to Mykrolis's letter.

On April 30, 2004, the Court granted Mykrolis's motion for a preliminary injunction (the "April 30 Order"), finding that Mykrolis had met its burden to show that it was likely to succeed in showing that the EZD-2 products infringed the patents-in-suit. The April 30 Order enjoins Pall and its affiliates from further infringing the patents-in-suit and from

> making, using, selling, or offering to sell within the United States, or from importing into the United States, the product now being sold under the name PhotoKleen™ EZD-2 Filter Assembly, or any colorable imitation thereof, until further order of this Court.

April 30, 2004 Order at 22. Because the EZD-New products are mere colorable imitations of the EZD-2 products and because the EZD-New products are sold under the

name PhotoKleen™ EZD-2 Filter Assembly, the preliminary injunction enjoins Pall from manufacturing, selling, offering, and importing these redesigned products.

On May 4, 2004, Mykrolis provided a Status Report to the Court, to inform the Court of the EZD-New products in light of Pall's failure to do so.

**The Second Action**

On May 4, 2004--rather than directly inform the Court in the First Action about the commercial availability of the EZD-New products as it had promised--Pall filed the Second Action. As in its Counterclaim, Pall sought a declaratory judgment that the patents-in-suit were invalid and that one class of its fluid separation devices--the EZD-New products--did not infringe the patents-in-suit. See Compl. in Second Action ¶¶ 22, 23, 31 & 32.

## ARGUMENT

### I. THE COURT SHOULD DISMISS THE SECOND ACTION AS DUPLICATIVE OF THE PENDING FIRST ACTION, WHICH INVOLVES THE SAME PATENTS, ISSUES, PARTIES AND PRODUCTS

The Declaratory Judgment Act does not mandate that this Court engage in the duplicative and wasteful exercise of entertaining two parallel actions involving the same patents, parties, and products. Indeed, to do so would run counter to the purpose of the Act to create a useful mechanism to clarify otherwise ambiguous legal relations and to afford relief from uncertainty and insecurity. See McGraw-Edison Co. v. Preformed Line Prods. Co., 362 F.2d 339, 342 (9th Cir. 1966) (affirming dismissal of declaratory judgment action on modified product where claims related to the modified design could have been and were brought in a first-filed suit for infringement); see also E. Edelmann & Co. v. Triple-A Specialty Co., 88 F.2d 852, 854 (7th Cir. 1937) (noting congressional intent "to avoid accrual of avoidable damages to one not certain of his rights and to afford

him an early adjudication without waiting until his adversary should see fit to begin suit, after damage had accrued.").

To prevent abuses, the Act grants substantial discretion to district courts to decline to hear the declaratory relief action, even when an actual controversy and federal jurisdiction exist. See Government Employees Ins. Co. v. Dizol, 133 F.3d 1220, 1222-23 (9th Cir. 1998) (en banc). "'The Declaratory Judgment Act was an authorization, not a command. It gave the federal courts competence to make a declaration of rights; it did not impose a duty to do so.'" Amerada Petroleum Corp. v. Marshall, 381 F.2d 661, 663 n.1 (5th Cir. 1967) (quoting Public Affairs Assoc., Inc. v. Rickover, 369 U.S. 111, 112 (1962)); see also Wilton v. Seven Falls Co., 515 U.S. 277, 286 (1995) ("Since its inception, the Declaratory Judgment Act has been understood to confer on federal courts unique and substantial discretion in deciding whether to declare the rights of litigants."). In particular, the Act provides:

> In the case of an actual controversy within its jurisdiction, . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

28 U.S.C. 2201(a) (emphasis added).

It is well settled that "[w]here there is a suit pending between the same parties . . . in which the issue of [patent] infringement may be properly adjudicated, discretionary dismissal [of a declaratory judgment action] is appropriate." TRW, Inc. v. Ellipse Corp., 495 F.2d 314, 322 (7th Cir. 1974); see Abbott Labs. v. Gardner, 387 U.S. 136, 155 (1967) ("A court may even in its discretion dismiss a declaratory judgment or injunctive suit if the same issue is pending in litigation elsewhere."), overruled on other grounds by

Califano v. Sanders, 430 U.S. 99, 105 (1977); see also Maryland Cas. Co. v. Knight, 96 F.3d 1284, 1288 (9th Cir. 1996) ("The primary instance in which a district court should exercise its discretion to dismiss a case is presented when there exists a parallel proceeding in state court."). In such an instance, the declaratory judgment action should be dismissed in favor of the first-filed action for infringement. See, e.g., Kerotest Mfg. Co. v. C-O-Two Fire Equip. Co., 342 U.S. 180, 185-86 (1952) (affirming dismissal of declaratory judgment action in a patent case where there was already pending a suit for infringement); Genentech, Inc. v. Eli Lilly & Co., 998 F.2d 931, 937-38 (Fed. Cir. 1993) ("We prefer to apply in patent cases the general rule whereby the forum of the first-filed case is favored, unless considerations of judicial and litigant economy, and the just and effective disposition of disputes, require otherwise."), overruled on other grounds by Wilton, 515 U.S. at 289.

Thus, for example, in Qualcomm, Inc. v. GTE Wireless, Inc., 79 F. Supp. 2d 1177, 1179 (S.D. Cal. 1999), the district court exercised its discretion to dismiss sua sponte a declaratory judgment action for a declaration of patent invalidity and noninfringement on the ground that the same patent was at issue in a separate (and earlier filed) action before the same court involving the same parties. See also TRW, Inc., 495 F. 2d at 322-23 (affirming dismissal of declaratory judgment action for declaration of patent invalidity filed by a manufacturer where patent infringement action was pending between the patent owner and those in privity with the manufacturer).

Dismissal is appropriate even where the declaratory relief action involves a modified version of the product that is directly the subject of the first-filed suit. Thus, in McGraw-Edison Co., 362 F.2d at 344-45, the Ninth Circuit affirmed the dismissal of a

declaratory judgment action that was filed subsequent to an infringement action pending in another district court. The court rejected the argument that the declaratory judgment action should not be dismissed because it involved a modified version of the product at issue in the first filed litigation. Id. at 344. The court reasoned that the modified product--although commercially introduced subsequent to the issuance of an injunction in the first case--might be the basis for a finding of contempt by the court in the first filed case. Id.

In the present action, dismissal of the declaratory judgment is also appropriate. As in Qualcomm and McGraw-Edison, the Second Action involves the same patents, the same parties, and the same products as the First Action. Indeed, the Second Action is entirely encompassed within Pall's Counterclaim in the First Action. While the Second Action is confined to Pall's EZD-New products, Pall's Counterclaim references Pall's fluid separation devices generally, which includes the EZD-2 products as well as the EZD-New products. Moreover, the EZD-New products were already the subject of a discovery request by Mykrolis in the First Action, and Pall promised to notify the Court in the First Action if and when it decided to commercially introduce the EZD-New products.

In sum, the Second Action adds nothing to Pall's Counterclaim or to the First Action. It is a thinly veiled collateral attack on this Court's April 30, 2004 Order and a waste of judicial resources. See, e.g., TRW, Inc., 495 F.2d at 322-23 ("It would be perverse to permit the Declaratory Judgment Act, designed to effectuate lawsuits, to be manipulated into a device allowing the avoidance of real legal involvement in an earlier pending suit between the manufacturer's customers and the patent owner, while

permitting the manufacturer subsequently to collaterally attack aspects of the decision unfavorable to its position."). As such, it should be dismissed.[2]

### CONCLUSION

Based on the foregoing, Mykrolis respectfully requests that the Court dismiss the Second Action.

        MYKROLIS CORPORATION
        By its attorneys,

*Susan G. L. Glovsky (DAW)*
Susan G. L. Glovsky BBO# 195880
John L. DuPré BBO# 549659
Kevin T. Shaughnessy BBO# 648653
Hamilton, Brook, Smith & Reynolds, P.C.
530 Virginia Road, P.O. Box 9133
Concord, Massachusetts 01742-9133
(978) 341-0036

*Dalila Argaez Wendlandt*
John T. Montgomery BBO# 352220
Dalila Argaez Wendlandt BBO# 639280
Ropes & Gray
One International Place
Boston, Massachusetts 02110
(617) 951-7000

May 7, 2004

---

[2] Even if the Court declines to exercise its discretion to dismiss the Second Action, the Court should consolidate the two cases pursuant to Rule 42(a) of the Federal Rules of Civil Procedure because the cases involve common questions of law and fact.

## Certificate of Service

I hereby certify that on May 7, 2004, a true and correct copy of Defendant's Motion To Dismiss and Memorandum of Law were served upon counsel for the plaintiff Pall Corporation in the manner indicated below:

*Via Hand*

Gary R. Greenberg
Greenberg Traurig LLP
One International Place, 20th Floor
Boston, MA 02110

*Via Facsimile with Confirmation via First Class Mail*

Mark E. Phelps
Leydig, Voit & Mayer, Ltd.
Two Prudential Plaza, Suite 4900
Chicago, IL 60601-6780

Dalila Argaez Wendlandt