IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| PALL CORPORATION, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 04-10887-GAO |
| | ) |
| MYKROLIS CORPORATION, | ) |
| | ) |
| Defendant. | ) |

**PALL CORPORATION'S OPPOSITION TO MYKROLIS CORPORATION'S
MOTION TO DISMISS THE COMPLAINT**

I.  **INTRODUCTION AND SUMMARY**

Plaintiff Pall Corporation ("Pall") opposes Defendant Mykrolis Corporation's ("Mykrolis") Motion to Dismiss the Complaint as moot in view of Pall's filing of an Amended Complaint seeking an adjudication as to further revised products developed since the original complaint was filed. In view of Pall's decision to further revise its products to even more clearly avoid any arguable infringement of U.S. Patent Nos. 6,068,770 ("the '770 patent") and 6,378,907 ("the '907 patent"), Pall no longer seeks adjudication as to the product at issue in the Complaint, *i.e.*, Pall's redesign EZD-2 filter assemblies on the market since February 2004. Pall does not intend to offer the redesigned EZD-2 filter assemblies that were the subject of the original complaint unless and until Pall receives a favorable ruling in 03-CV-10392-GAO ("the 10392 action"), in which Pall is appealing the Court's claim construction and its issuance of the preliminary injunction.

Since the time the original complaint was filed on May 4, 2004, Pall has decided to implement modifications necessary to remove any arguable "automatic" alignment under the Court's claim construction. Pall has designated the modified products as PhotoKleen™ EZD-3 filter assemblies ("the EZD-3 filter assemblies"). Unlike Pall's PhotoKleen™ EZD-2 filter assemblies ("the EZD-2 filter assemblies"), the manifold and filter capsule in the EZD-3 filter assemblies combine to eliminate any arguable "automatic" alignment that the Court found in the 10392 action to be an important aspect of the claimed inventions.

Despite the elimination of the "automatic" alignment in Pall's EZD-3 filter assemblies, Mykrolis has indicated that it considers Pall's EZD-3 filter assemblies to be subject to the Court's injunction and infringe the '770 and '907 patents. Accordingly, Pall has filed an Amended Complaint under Rule 15(a), FED.R.CIV.P., seeking, *inter alia*, a declaration of noninfringement with respect to the EZD-3 filter assemblies now offered by Pall. Pall's Amended Complaint is attached hereto as Exhibit 1 (including attached Exhibits A-N). Because Mykrolis' Motion To Dismiss was directed to Pall's redesigned EZD-2 filter assemblies before they were further revised into Pall's EZD-3 filter assemblies that are the subject of the Amended Complaint, Mykrolis' Motion to Dismiss has been rendered moot. Pall respectfully requests that Mykrolis' Motion To Dismiss the Complaint be denied.

## II.  THE EZD-2 FILTER ASSEMBLIES THAT WERE THE SUBJECT OF THE ORIGINAL COMPLAINT

The redesigned EZD-2 filter assemblies that are the subject of the original complaint include a filter capsule and either a so-called "retrofit" or "stand-alone" manifold. In both versions of the revised EZD-2 filter assemblies, as well as in both versions of the enjoined EZD-2 filter assemblies, the filter capsule acts in conjunction

2

with the manifold to mechanically align the fluid connectors of the filter capsule and manifold.[1]

### 1.     The EZD-2 Filter Assemblies With A "Retrofit" Manifold

In Pall's "retrofit" manifolds,[2] the alignment of the fluid connectors on the filter capsule with those on the manifold is accomplished by the interaction of an alignment tab on the bottom of the filter capsule with a mating slot in the lower surface of the elevating platform of the manifold.

 

Alignment tab on EZD-2 capsule mated with alignment slot on EZD-2 retrofit manifold

The operator first inserts the filter capsule into the elevating platform and manually rotates the filter capsule until the tab on the bottom of the filter capsule mates with the slot in the lower surface of the elevating platform of the manifold. Once the tab is mated with the slot, the fluid connectors at the top of the filter capsule are aligned with the fluid connectors on the manifold. The slot and tab combine to ensure that the

---

[1]     The revised EZD-2 filter assemblies differ from the enjoined EZD-2 filter assemblies in the movement of the pins and linkages that function to maintain the filter capsule in sealing engagement with the manifold during operating conditions. This distinction is also found in Pall's EZD-3 filter assemblies and is further confirmation that Pall's EZD-3 filter assemblies do not infringe the Mykrolis patents under the Court's claim construction.

[2]     This discussion is also applicable to the retrofit manifolds that are the subject of the 10392 action.

3

filter capsule is held in the aligned condition. The operator then moves the handle downward to elevate the platform to engage the fluid connectors.

### 2.    The EZD-2 Filter Assemblies With A "Stand-Alone" Manifold

The EZD-2 filter assemblies with "stand-alone" manifolds[3] have two mechanisms that cooperate to assure the proper alignment of the fluid connectors of the filter capsule and manifold. The first mechanism is a slot to receive the tab on the bottom of the filter capsule, the same as with the retrofit manifolds.



Alignment tab on EZD-2 capsule aligned with alignment slot on EZD-2 stand-alone manifold (before mating)

Alignment tab on EZD-2 capsule mated with alignment slot on EZD-2 stand-alone manifold

The second alignment mechanism in Pall's EZD-2 filter assemblies with stand-alone manifolds is a notch at the rear of the elevating platform.

 

Views showing ridge on EZD-2 filter capsule mating with notch on EZD-2 manifold

---

[3]    This discussion is also applicable to the stand-alone manifolds that are the subject of the 10392 action.

4

When the filter capsule is moved into place, this notch receives a ridge on the filter capsule[4] opposite the handle thereby assisting in aligning the capsule. The notch and ridge combine with the tab and the slot to ensure that the filter capsule cannot move relative to the manifold such that the fluid connectors are, and remain, aligned.

### III. THE EZD-3 FILTER ASSEMBLIES DEVELOPED SINCE THE APRIL 30, 2004 ORDER

In response to Mykrolis' urging, the Court relied on an "automatic" alignment feature in the claims of the patents in suit as "an important aspect of the Mykrolis invention" that distinguished the claims over the Ogden prior art patent. Opinion at pp. 17 and 18. As a result of this finding, any infringing filter assembly must include a mechanism for so-called "automatic" alignment. *See, e.g., Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 29 (1997) (stating that every claim limitation or its equivalent must be found in the accused device in order to find infringement). In Pall's EZD-3 filter assemblies, however, a significant modification to the filter capsule and another significant modification to Pall's EZD-2 stand-alone manifold combine to eliminate any arguable "automatic" alignment or mechanical feature that functions to mechanically align all of the fluid connectors.[5] The elimination of any "automatic" alignment in Pall's EZD-3 retrofit and stand-alone filter assemblies is addressed separately below.

---

[4] The ridge is a functional part of the filter and surrounds the vertical inlet conduit within the filter.

[5] As a result of the different alignment mechanisms in the EZD-2 retrofit and stand-alone manifolds (as discussed above), the modification to the capsule alone with no modification to the EZD-2 retrofit manifold was sufficient to eliminate any so-called "automatic" alignment.

5

1. **The EZD-3 Filter Assemblies With A Retrofit Manifold**

In the EZD-3 filter assemblies with a retrofit manifold, the elimination of the alignment tab on the bottom of the filter capsule is sufficient to eliminate any arguable "automatic" mechanical alignment.



Retrofit manifold (no distinction between EZD-2 and EZD-3 manifolds) about to receive an EZD-3 filter capsule

Removal of the alignment tab from the filter capsule permits a substantial degree of rotational freedom within the receptor on the retrofit manifold.



Views showing EZD-3 filter capsule misaligned both counter-clockwise and clockwise

The substantial degree of rotational freedom eliminates any arguable infringement because Mykrolis argued, and the Court held, that "automatic" alignment was the sole feature that arguably distinguished the Mykrolis patents from the prior art Ogden patent. Opinion at pp. 17-18. In the Ogden patent, the receptor on the manifold mechanically aligns the centrally-disposed fluid connector but permits a substantial degree of free rotation for the outboard fluid connector such that the operator must

6

manually align the outboard fluid connector. Mykrolis argued, and the Court held, that Ogden does not invalidate the claims because the "receptor in the Ogden Patent does not automatically align the filter cartridge such that the inlet and outlet conduits of the manifold are positioned in line with the mating connectors on the filter cartridge." *Id.* Indeed, the Court characterized "automatic alignment" as an "important aspect of the Mykrolis invention." *Id.* Hence, removal of the alignment tab from the Pall filter capsule used with EZD-3 retrofit manifolds eliminates any arguable "automatic alignment" in the context of the patent claims as construed by the Court.

### 2. The EZD-3 Filter Assemblies With A Stand-Alone Manifold

The elevating platform on the stand-alone manifold of the EZD-3 filter assemblies eliminates the notch at the back of the elevating platform that received a ridge on the filter capsule to help align the fluid connectors in the EZD-2 filter assemblies. Removal of the notch in the elevating platform together with the removal of the tab on the bottom of the filter capsule combine to eliminate mechanical alignment and permit a substantial degree of rotational freedom of the filter capsule within the receptor.



Plan view of lower portion of elevating platform of EZD-3 stand-alone manifold



Plan view showing range of motion of EZD-3 capsule in EZD-3 stand-alone manifold

The notch on the upper finger extending from the rear flange of the EZD-3 stand-alone manifold is worthy of note. As shown in the right figure above, that notch

permits the maximum degree of rotational freedom of the filter capsule in the receptor. Hence, as contrasted with the notch in the EZD-2 manifold (illustrated above), which assisted alignment, the notch in the EZD-3 manifold *expands the range of misalignment*, further ensuring the need for the operator to manually align the capsule with the manifold.



Plan view showing EZD-3 capsule manually aligned in EZD-3 stand-alone manifold

The tab at the bottom left portion of the EZD-3 stand-alone manifold is also worthy of note. This tab permits the operator to *visually align* the filter capsule, but does not contribute to any mechanical or "automatic" alignment of the fluid connectors on the filter capsule and the manifold. Pall's EZD-3 stand-alone manifold and EZD-3 filter capsule combine to clearly eliminate any arguable "automatic" alignment in the context of the patent claims as construed by the Court.

IV. **ARGUMENT**

Mykrolis' Motion To Dismiss Complaint should be denied as moot in view of Pall's filing of an Amended Complaint seeking an adjudication as to the further revised EZD-3 filter assemblies.

**1. The EZD-3 Filter Assemblies Are Not Merely Colorable Imitations Of The Enjoined EZD-2 Filter Assemblies**

Mykrolis cannot argue, as it did in its supporting memorandum directed to the revised EZD-2 filter assemblies, that the EZD-3 filter assemblies without any

8

"automatic" alignment features are merely colorable imitations of the enjoined EZD-2 filter assemblies. Yet, astonishingly, in recent correspondence with Pall, Mykrolis has done just that—"The information provided [by Pall] only confirms that the modifications proposed by Pall do not eliminate infringement by its products and that the products (even as modified) are subject to the preliminary injunction order." Exhibit 1 (N), p.2, paragraph beginning with "Seventh".

The term "colorable" is defined as "that which is in appearance only, and not in reality." HENRY C. BLACK, BLACK'S LAW DICTIONARY 265 (6th ed., West Publishing Co. 1990). An example of a colorable imitation is one in which the changes from the enjoined product do not even relate to the claimed features of the invention. *See, e.g., Additive Control Systems v. Flowdata Inc.*, 154 F.3d 1345, 1350 (Fed. Cir. 1998) (holding that the district court did not abuse its discretion in finding the modified product a colorable imitation because the changes "were not elements of the pertinent patent claim" and the changes were "not necessary for its operation and were included merely in an attempt to disguise the actual operation of the device."); *Dentsply Int'l v. Kerr Mfg. Co.*, 42 F.Supp.2d 385, 401-403 (D. Del. 1999) (holding that the modified product was a colorable imitation because the changes were "irrelevant to the nature of the device and the elements of the patents.").

The elimination of the "automatic" alignment features in Pall's EZD-3 filter assemblies clearly relate to the claimed features of the Mykrolis patents. In the 10392 action, Mykrolis argued, and the Court held, that the claims of the '770 and '907 patents were limited to "automatic" alignment, which is an "important" claimed aspect of the patents. Indeed, the "automatic" alignment was found to be the *only* feature that distinguished the Mykrolis patents from the prior art Ogden patent. Opinion at pp. 17-18. Hence, far from being merely a colorable change, the

elimination of the "automatic" alignment features in Pall's EZD-3 filter assemblies is a highly significant modification in the context of the patent claims as construed by the Court.

### 2. The Declaratory Judgment Action Is Not Duplicative

This declaratory judgment action is not duplicative of the original action concerning the enjoined EZD-2 filter assemblies as Mykrolis may argue. Pall did not dispute in the original action that the filter capsule and manifold in the enjoined EZD-2 filter assemblies combined to mechanically align the fluid connectors of the filter capsule and manifold, which Mykrolis argued and the Court found to perform the claimed "automatic" or mechanical alignment function. The elimination of "automatic" alignment in Pall's EZD-3 filter assemblies therefore raises substantial new issues.

Under these circumstances, the courts have held that the modified product is properly the subject of a new action. *See, e.g., KSM Fastening Systems v. H.A. Jones Co.*, 776 F.2d 1522, 1531-32 (Fed. Cir. 1985) (holding that summary contempt proceedings are inappropriate to resolve new issues of fact and open questions of infringement and new proceedings are required to address infringement with respect to the modified product); *see also International Communication Materials Inc. v. Ricoh Co.*, 108 F.3d 316, 318-19 (Fed. Cir. 1997) (upholding district court's denial of preliminary injunction in second filed declaratory judgment action because the modified product did not fall within the adjudicated scope of the claims); *Decade Industries v. Wood Technology*, 145 F.Supp.2d 1075, 1079-80 (D.Mn. 2001) (finding contempt proceedings inappropriate for modified device but consolidating the first action with a new declaratory judgment action for the modified device); and *Simmons Fastener Corp. v. Illinois Tool Works*, 630 F.Supp. 1310, 1311 (N.D.N.Y. 1986)

(finding contempt proceedings inappropriate and stating that any further action regarding the modified product must occur through a new complaint).

### 3. Mykrolis' Current Focus On The Manifolds Rather Than The Filter Assemblies Is Misguided

Curiously, in recent correspondence responding to Pall's efforts to resolve the non-infringement of Pall's EZD-3 filter assemblies, Mykrolis has shifted its focus from filter assemblies, *i.e.*, a filter capsule and a manifold, to manifolds alone. See, *e.g.*, Exhibit 1 (L), p. 2, paragraph beginning with "Finally ...". Although Pall promptly pointed out the improper focus (Exhibit 1 (M), p. 3, second paragraph under "Ninth ("finally")"), Mykrolis indignantly persisted with the improper focus:

> Perhaps you could explain to us how Pall can maintain that the retrofit manifold—*the very same manifold that Mykrolis established infringed and the Court agreed should be enjoined*—somehow loses its infringing status even though Pall proposes not to modify it in any respect.

Exhibit 1 (N), p. 2, "Seventh" paragraph, last sentence (emphasis added). The question itself is fundamentally flawed.

The Court's injunction is expressly directed to Pall's EZD-2 filter assemblies. Opinion at p. 22. A "filter assembly" is the combination of a manifold and a filter capsule. See, *e.g.*, Exhibit 2 (Pall product literature relating to the EZD-2 filter assemblies). Claim 3 of the '770 patent is expressly directed to a filter capsule in combination with a manifold. Claim 1 of the '907 patent, while directed to a manifold, has been construed to call for, *inter alia*, "automatically" aligning a filter capsule. It is axiomatic that a manifold that effects "automatic" alignment can only be evaluated for infringement in the context of the filter capsules with which it is to be used—to assess whether the manifold and filter capsule will interact to accomplish

11

the requisite alignment. Hence, the focus for infringement of both claims is on the filter assemblies, not simply the manifolds. The Court will recall that Mykrolis' animations that were referenced repeatedly during the preliminary injunction proceeding focused upon the manner in which the alignment tab on Pall's EZD-2 filter capsule engaged the slot in the bottom of the elevating platform and the ridge on the filter capsule engaged the notch in the rear of the EZD-2 manifold. As explained in detail above, those features and interactions are absent in Pall's EZD-3 filter assemblies.[6]

As the saying goes, "it takes two to tango."[7] In the case of the filter assemblies at issue in this and the 10392 action, the manifold cannot effect the requisite "automatic" alignment of the filter capsule without interaction with something on the filter capsule to be aligned. With the EZD-3 filter assemblies, the EZD-3 manifolds cannot effect the requisite aligning of the EZD-3 filter capsules because there is nothing on the manifolds to interact with anything on the filter capsules.

### 4. Pall's Filing Of This Declaratory Judgment Action Is Proper

The purpose of the Declaratory Judgment Act "is to afford an added remedy to one who is uncertain of his rights and who desires an early adjudication thereof

---

[6] It may be interesting to note that, in considering the infringement issues at the preliminary injunction hearing, most of the focus was on Pall's EZD-2 manifolds because the contested infringement issues pertained to the configuration, operation and function of the linkage mechanisms and the safety button on the manifolds. With Pall's new EZD-3 filter assemblies, however, the focus for the infringement issues shifts to the interaction—rather the lack thereof—between the manifolds and the filter capsules in achieving the proper alignment of the filter capsule in the manifolds.

[7] Interpreted by one source to mean that "certain activities cannot be performed alone—such as quarreling, making love, and dancing the tango." THE NEW DICTIONARY OF CULTURAL LITERACY (3d ed. 2002), http://www.bartleby.com/59/3/ittakestwoto.html (May 21, 2004) (Exhibit 3).

without having to wait until his adversary should decide to bring suit, and to act at his peril in the interim." *McGraw-Edison Co. v. Preformed Line Products Co.*, 362 F.2d 339, 342 (9th Cir. 1966), quoting *Shell Oil Co. v. Frusetta*, 290 F.2d 689, 691-92 (9th Cir. 1961). As Professor Moore has stated, the decision on a motion to dismiss should be based on two factors: (1) "whether a declaratory judgment would serve a useful purpose 'in clarifying and settling the legal relations in issue'" and (2) "whether it would 'terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding.'" *Id.* at 342, quoting 6 MOORE, FEDERAL PRACTICE § 57.08[6] at 3042 (2d ed. 1965). In filing this declaratory judgment action, Pall desires to remove as expeditiously as possible the cloud of uncertainty that now hangs over Pall's EZD-3 filter assemblies not addressed in the original action. Pall's filing of this declaratory judgment action therefore serves the purposes of the act.

Mykrolis relies principally on the *McGraw-Edison* and *Qualcomm* cases to support its position that Pall's declaratory judgment action should be dismissed as an abuse of the Declaratory Judgment Act. However, both of these cases are inapt.

In *McGraw-Edison*, the patentee obtained an injunction from the Ohio district court against the manufacturer and sought to have the manufacturer charged with contempt with respect to a modified device. *McGraw-Edison*, 362 F.2d at 340-41. The patentee also filed suit in the California district court against a customer of the manufacturer with respect to the modified device. *Id.* The court dismissed the California action because "the issue first should be determined in the Ohio court, where any judgment will be binding upon the manufacturer of the product" and any customer who knowingly aids and abets the manufacturer in violation of the injunction. *Id.* at 344. The issues addressed in *McGraw-Edison* are absent here.

13

In *Qualcomm*, the patentee filed suit against the manufacturer and, three months later, the manufacturer filed a declaratory judgment action against the patentee in the same court. *Qualcomm, Inc. v. GTE Wireless, Inc.*, 79 F.Supp.2d 1177, 1179 (S.D.Cal. 1999). Both actions involved identical parties, patents and products. No issue was raised by either party with respect to a modified product. The only issue was who should be the plaintiff and who should be the defendant. *Id.* at 1178. The court held that the patentee should be the plaintiff because the patentee's action was first filed and should be the forum for adjudication. *Id.* at 1179. The issues addressed in *Qualcomm* are absent here.

Unlike the cases relied upon by Mykrolis,[8] Pall is not engaged in forum shopping and is not racing to the court house over an identical product in a parallel action. Rather, Pall is seeking to remove the cloud of infringement from the new EZD-3 filter assemblies that were not at issue in the original action. The Court's memorandum and order did not address the question of infringement with respect to the elimination of the "automatic" alignment features in Pall's new EZD-3 filter assemblies. Indeed, the product modifications have only been implemented since the Court's order finding "automatic" alignment to be an important feature of the claims of the Mykrolis patents. Hence, Mykrolis' reliance on *McGraw-Edison* and *Qualcomm*, as well as the other cases cited in its memorandum, is misplaced.

### 5.  Pall Supports Consolidation If Two Basic Objectives Can Be Maintained

It is important for Pall to expeditiously remove the cloud of infringement with respect to the new EZD-3 filter assemblies under the Court's claim construction. It is

---

[8] The other cases cited in Mykrolis' memorandum (*TRW*, *Abbott Labs.*, *Maryland Cas. Co.*, *Kerotest*, and *Genentech*) are also inapt. All involved parallel actions involving identical products, mostly in separate jurisdictions.

also important for Pall to be able to appeal the Court's claim construction in the original action, which Pall respectfully suggests is overly-broad as it relates to the latching means and overly narrow as it relates to "automatic" alignment. Pall's declaratory judgment action therefore promotes judicial economy. Pall supports consolidation with the original action as long as it can expeditiously adjudicate the issues of validity and infringement of Pall's EZD-3 filter assemblies under Pall's and the Court's respective claim constructions in the original action while appealing the Court's decision in the original action.

## IV.   CONCLUSION

For at least the reasons addressed herein, Pall respectfully requests that Mykrolis' Motion To Dismiss the Complaint be denied as moot and that Pall be allowed to expeditiously adjudicate the issues of validity and infringement with

respect to the EZD-3 filter assemblies under Pall's and the Court's respective claim constructions.

                                                   Respectfully submitted,

                                                   PALL CORPORATION

                                                 By its attorneys,

                                               _____
                                               Gary R. Greenberg, BBO #209420
                                               Louis J. Scerra, Jr., BBO #543600
                                               Greenberg Traurig, LLP
                                               One International Place
                                               Boston, MA  02110
                                               (617) 310-6000

Of Counsel

H. Michael Hartmann
Mark E. Phelps
Jeremy C. Lowe
LEYDIG, VOIT & MAYER, LTD.
Two Prudential Plaza, Suite 4900
Chicago, IL  60601-6780
(312) 616-5600

                                               ATTORNEYS FOR PLAINTIFF
                                               PALL CORPORATION

Dated: May 21, 2004

## CERTIFICATE OF SERVICE

I hereby certify that on May 21, 2003, a true and correct copy of PALL CORPORATION'S MEMORANDUM IN OPPOSITION TO MYKROLIS CORPORATION'S MOTION TO DISMISS THE COMPLAINT was served upon counsel for Defendant Mykrolis in the manner indicated below:

**_By Hand Delivery_**

Susan G.L. Glovsky
Hamilton, Brook, Smith & Reynolds, P.C.
530 Virginia Road
Concord, MA  01742
Tel: (978) 341-0036
Fax: (978) 341-0136

**_By Hand Delivery_**

John T. Montgomery
Edward J. Kelly
Ropes & Gray
One International Place
Nineteenth Floor
Boston, MA  02110
Tel.:  (617) 951-7000
Fax:  (617) 951-7050

_____