UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| PALL CORPORATION,<br><br>        Plaintiff,<br><br>v.<br><br>MYKROLIS CORPORATION,<br><br>        Defendant. | Civil Action No. 04-CV-10887 GAO |

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS THE AMENDED COMPLAINT

Defendant Mykrolis Corporation ("Mykrolis") respectfully submits this memorandum of law in support of its Motion to Dismiss the Amended Complaint for Declaratory Judgment of Plaintiff Pall Corporation ("Pall").

### PRELIMINARY STATEMENT

Recognizing that an insubstantial change in its EZD-2 manifolds was insufficient to circumvent a preliminary injunction in <u>Mykrolis Corp. v. Pall Corp.</u>, Civil Action No. 03 CV 10392 GAO (the "First Action"), Pall--the defendant enjoined in that action--has amended its complaint in the present declaratory judgment action (the "Second Action") such that Pall now seeks relief with regard to products it has chosen to rename "EZD-3" filter assemblies. The amendment, however, does not alter the fact that the Second Action involves the same patents, parties, and products as the First Action. Indeed, the preliminary injunction issued in the First Action expressly enjoins some of the very products that are specifically identified by Pall in its Amended Complaint.

Pall purports to defend maintaining the Second Action on the ground that it involves "filter assemblies" that were modified specifically to circumvent the Preliminary Injunction. It is clear, however, that the Second Action adds nothing new to the First Action; as such, it should be dismissed. In particular, the First Action involves all of Pall's fluid separation devices that infringed Mykrolis's U.S. Patent Nos. 6,068,770 (the "'770 Patent") and 6,378,907 B1 (the "'907 Patent") (collectively, the "patents-in-suit"). At the time the First Action was commenced on March 3, 2003, Mykrolis was only aware of Pall's EZD-2 stand alone manifold. Prior to the hearing on Mykrolis's preliminary injunction motion, Mykrolis learned of Pall's other EZD-2 products--namely, the EZD-2 retrofit manifolds. On March 27, 2003, Pall answered the complaint and brought a counterclaim for a declaratory judgment that the patents-in-suit are invalid and that Pall's fluid separation devices do not infringe those patents. In the First Action, the Court has already held a <u>Markman</u> hearing, issued a decision on claim construction, and enjoined Pall from manufacturing, selling, offering for sale, or importing its EZD-2 products, as well as colorable imitations of these products.

The original Complaint in the Second Action, which was filed on May 4, 2004, involved one class of Pall's infringing fluid separation devices. These were redesigned EZD-2 stand alone manifolds and retrofit manifolds (the "EZD-New products"). The EZD-New products differed from the EZD-2 products in that the EZD-New products eliminated a safety button lock and added a slight downward jog to the end of the over center locking mechanism of the EZD-2 products. As in its Counterclaim in the First Action, Pall sought a declaratory judgment that the patents-in-suit were invalid. And, Pall sought a declaration that one class of its fluid separation devices--the EZD-New

products--did not infringe. Mykrolis moved to dismiss the Second Action in light of its duplicative and wasteful nature. In response, Pall amended its complaint.

The Amended Complaint in the Second Action also involves one class of Pall's infringing fluid separation devices. These are redesigned EZD-2 stand alone manifolds and redesigned EZD-2 filter modules (which Pall has renamed the "EZD-3 products").[1] These EZD-3 products differ from the EZD-2 products in that Pall has removed a tab on the bottom of the EZD-2 filter capsule and a notch on the rear portion of the EZD-2 stand alone manifold. Even as amended, the Second Action (like Pall's Counterclaim in the First Action) is for a declaratory judgment of noninfringment and invalidity of the patents-in-suit. Even as amended, there is no discernable difference between Pall's Counterclaim in the First Action and Pall's Second Action. The specific products that are the subject of the Second Action--which Pall has now conveniently renamed the EZD-3 products--are within the general class of Pall's fluid separation devices that are the subject of the Complaint and Counterclaim in the First Action. In other words, the First Action addresses all of the issues raised by the present action.[2]

Hence, the Second Action serves no useful purpose. It is an abuse of the spirit and intent of the Declaratory Judgment Act, wastes judicial resources, and is duplicative

---

[1] It is not clear from Pall's submissions or its correspondence with Mykrolis whether Pall's EZD-3 retrofit manifolds are identical (except in name) to the EZD-2 retrofit manifolds or whether they include the locking mechanism of the EZD-New manifolds. Although Mykrolis expressly asked Pall this question, Pall has not yet responded. In either case, the First Action addresses these retrofit manifolds.

[2] To the extent that the Court considers there to be additional issues in the Second Action for resolution, they are properly resolved through an amendment to the claims or counterclaim pending in the First Action.

of the First Action. For these reasons, Mykrolis respectfully requests that this Court exercise its discretion under the Act to dismiss the Second Action.

## BACKGROUND

**The First Action**

Mykrolis commenced the First Action on March 3, 2003, alleging that Pall was making, using, selling, offering for sale, or importing "fluid separation devices, including, but not limited to, [Pall's] PhotoKleen™ EZD-2 Filter Assembly," that infringe the patents-in-suit. See Ex. B to Mykrolis's Memorandum Of Law In Support of Its Motion To Dismiss The Complaint ("Memorandum To Dismiss") (Compl. in First Action ¶¶ 9, 14). Mykrolis further alleged that "Pall is engaged in a systematic effort to infringe Mykrolis's patent rights, including rights under the ['770 and '907] Patent[s], by developing and fabricating the EZD-2 and other infringing products that replace products and components of Mykrolis." Id. at ¶¶ 10, 15.

Also on March 3, 2003, Mykrolis moved for a preliminary injunction, seeking to prevent the irreparable harm resulting from the manufacture, distribution, and importation of Pall's infringing fluid separation devices. Id. at ¶¶ C-E.

On March 27, 2003, Pall filed an Answer and Counterclaim for a declaratory judgment that its "fluid separation devices and/or manifold construction, including Pall's PhotoKleen™ EZD-2 Filter Assembly," do not infringe the patents-in-suit. See Ex. C to Memorandum To Dismiss (Answer & Counterclaim ¶¶ 12, 13 & 15). Pall also sought a declaration that the patents-in-suit were invalid. Id. at ¶¶ 14 & 16.

On June 19, 2003, Mykrolis learned that Pall had made prototypes of a redesigned EZD-2 product and requested that Pall provide samples of these products. Pall refused, and on June 24, 2003, Mykrolis moved to compel production of information concerning

the redesigned products (the EZD-New products) so that Mykrolis could evaluate the redesign to determine whether it infringed. Pall opposed the motion on the ground that the redesign was merely a prototype that was not yet commercially introduced; Pall promised to inform Mykrolis and the Court if and when the products were commercially available. On July 1, 2003, this Court denied Mykrolis's motion to compel. Pall did not inform the Court of the commercial availability of the products and, as discussed below, waited until February 2004 to provide Mykrolis with the EZD-New products, which Mykrolis then analyzed and determined to infringe the patents-in-suit.

On August 6-12, 2003, the Court held a hearing on Mykrolis's motion for a preliminary injunction and on claim construction. At that time, Pall did not inform the Court or Mykrolis whether the redesigned products had been introduced in the United States; nor did Pall provide any information on the results of its assessment of the commercial viability of the redesigned products.

By letter dated February 6, 2004, Pall's counsel informed Mykrolis that Pall was "phasing out" its EZD-2 manifolds and substituting revised versions of the manifolds. Pall also provided Mykrolis with three samples of three types of redesigned products. These EZD-New products are identical in all material respects to the EZD-2 products, except that a portion of the locking mechanism has been modified. In particular, the EZD-New products eliminate the secondary safety button lock. Also, the EZD-New products modify a portion of the over-center locking mechanism. The horizontal slot has a slight downward jog at its end. Nonetheless, the EZD-New products perform the identical function as the EZD-2 products and the Mykrolis invention as claimed in the patents-in-suit--that is, they position the connector means on the separation module into

fluid tight engagement with the connector means on the fluid connector member (or manifold), and they secure the separation module and fluid connector member in that position for fluid processing. In doing so, the EZD-New products, like the EZD-2 products and the Mykrolis invention, seek to ensure that filter installation and change-out occur quickly, with minimal loss of fluid, without spillage, and without introduction of contaminant. See Ex. A to Memorandum To Dismiss at 14.

On March 8, 2004, Mykrolis informed Pall that these minor changes in the EZD-2 products did not render them non-infringing. Mykrolis also reminded Pall that the preliminary injunction motion (then pending before the Court) would cover the EZD-New products. Mykrolis further asked Pall to clarify what it meant by its statement that Pall was "phasing out" the EZD-2 products. On March 24, Pall represented that it has "ceased marketing the manifolds of the prior designs in the United States and has now commercially introduced into the United States the revised manifolds . . . ." On March 31, 2004, Mykrolis again informed Pall that the EZD-New products infringed the patents-in-suit and that the pending preliminary injunction motion covered these products. Pall did not respond to Mykrolis's letter.

On April 30, 2004, the Court granted Mykrolis's motion for a preliminary injunction (the "April 30 Order"), finding that Mykrolis had met its burden to show that it was likely to succeed in showing that the EZD-2 products infringed the patents-in-suit. The April 30 Order enjoins Pall and its affiliates from further infringing the patents-in-suit and from

> making, using, selling, or offering to sell within the United States, or from importing into the United States, the product now being sold under the name PhotoKleen™ EZD-2 Filter Assembly, or any colorable imitation thereof, until further order of this Court.

Ex. A to Memorandum To Dismiss at 22. The preliminary injunction enjoins Pall from making, using, selling, or offering to sell within the United States, or from importing into the United States, these EZD-New products, since these new products are not only mere colorable imitations of Pall's earlier EZD-2 products, but were the very products being sold under the name "EZD-2 Filter Assembly" at the time of the Court's Order.[3]

On May 4, 2004, Mykrolis provided a Status Report to the Court, to inform the Court of the EZD-New products in light of Pall's failure to do so.

On May 7, 2004, Pall provided its own Status Report to the Court, reporting (albeit belatedly) on its EZD-New products and informing the Court of yet another design proposal to eliminate the tab on its filter capsules and to eliminate a notch on one of the three types of EZD-2 manifolds enjoined by the Preliminary Injunction--the stand alone EZD-2 manifold. Pall did not propose to modify two other types of EZD-2 manifolds also enjoined by the Preliminary Injunction--namely, the bolt-in and slide-in EZD-2 retrofit manifolds (collectively, the "EZD-2 Retrofit Manifolds"). Pall also requested that the Court clarify that the Preliminary Injunction did not expressly apply either to the EZD-New or to its most recent proposal. Pall informed the Court that it would make further submissions on both the EZD-New products and the most recent modifications to some of its filter assemblies within days of its Status Report.

On May 21, 2004, having waited in vain for the further submissions promised by Pall to the Court and with Mykrolis's time to respond expiring, Mykrolis submitted its

---

[3] Pall has recently acknowledged that the "EZD-2" products being sold at the time of the April 30, 2004 Order were the "redesigned-locking"—*i.e.* "EZD-New"-- products. See Pall Corporation's Second Status Report And Comments On Its Request For Clarification Of The Preliminary Injunction 2.

opposition to Pall's request for clarification of the Preliminary Injunction and requested that the Court defer decision on Pall's request until such time as Pall submitted its promised submissions.

On May 25, 2004, Pall filed, in the First Action, a Second Status Report and "Comments" on its requested clarification of the Preliminary Injunction. Highlighting the point that this Second Action is a wasteful duplication of the parties' and the Court's resources, Pall's Second Status report in the First Action cited to, and principally relied upon, a memorandum filed by Pall days earlier in the Second Action to apprise the Court of the specifics of its most recent design changes to the EZD products. See Pall Corporation's Second Status Report And Comments On Its Request For Clarification Of The Preliminary Injunction 2 n.2. Moreover, Pall, again citing to its memorandum in the Second Action, additionally stated that "no further submission was or is necessary regarding Pall's redesigned-locking EZD-2 filter assemblies," apparently reconsidering its statements in its May 7 Status Report that it would, in fact, file further submissions. See id. at 2 n.3.

Pall began in its Second Status Report to refer to its fluid separation devices as "EZD-3" products, rather than using the name "EZD-2" products, which were expressly enjoined by the Order. Pall also asserted therein that its previous request for clarification of the scope of the Preliminary Injunction was "moot" because (according to Pall) the "EZD-3" filter assembles are not "EZD-2" filter assemblies or colorable imitations thereof. Pall made this assertion even though two of its so-called EZD-3 products, the EZD-3 Retrofit Manifolds, are identical to the manifolds sold under the "EZD-2" designation, and which were expressly enjoined by the Preliminary Injunction. Pall

proposes to continue to manufacture and sell the EZD-2 Retrofit Manifolds, now under the "EZD-3" name, even though it has made no modifications to those products, and having apparently abandoned any serious argument that the modified locking mechanism of the EZD-New products avoids the Preliminary Injunction.

**The Second Action**

On May 4, 2004--rather than directly inform the Court in the First Action about the commercial availability of the EZD-New products as it had promised--Pall filed the Second Action. As in its Counterclaim, Pall sought a declaratory judgment that the patents-in-suit were invalid and that one class of its fluid separation devices--the EZD-New products--did not infringe the patents-in-suit. See Compl. in Second Action ¶¶ 22, 23, 31 & 32.

On May 7, 2004, Mykrolis filed a Motion To Dismiss The Complaint, on the ground that the Second Action was entirely duplicative of the First Action and thus an abuse of the Declaratory Judgment Act.

On May 21, 2004, Pall filed an Amended Complaint and its opposition to Mykrolis's motion, arguing that Mykrolis's motion to dismiss was moot in light of Pall's decision to file an Amended Complaint in the Second Action. In the Amended Complaint (as in the original Complaint in the Second Action and in Pall's Counterclaim in the First Action), Pall sought a declaratory judgment that the patents-in-suit were invalid. As in the Counterclaim, Pall also sought a declaration that one class of its fluid separation devices--the newly named EZD-3 products--did not infringe the patents-in-suit. See Amended Compl. in Second Action ¶¶ 31, 32, 40, 41. Pall's Amended Complaint in this case suffers from the same problems as the original, and to avoid

duplication should be dismissed. For these reasons, Mykrolis submits its Motion To Dismiss The Amended Complaint and this Memorandum of Law.

## ARGUMENT

### I. THE COURT SHOULD DISMISS THE SECOND ACTION AS DUPLICATIVE OF THE PENDING FIRST ACTION, WHICH INVOLVES THE SAME PATENTS, ISSUES, PARTIES AND PRODUCTS

The Declaratory Judgment Act does not mandate that this Court engage in the duplicative and wasteful exercise of entertaining two parallel actions involving the same patents, parties, and products. Indeed, to do so would run counter to the purpose of the Act to create a useful mechanism to clarify otherwise ambiguous legal relations and to afford relief from uncertainty and insecurity. See McGraw-Edison Co. v. Preformed Line Prods. Co., 362 F.2d 339, 342 (9th Cir. 1966) (affirming dismissal of declaratory judgment action on modified product where claims related to the modified design could have been and were brought in a first-filed suit for infringement); see also E. Edelmann & Co. v. Triple-A Specialty Co., 88 F.2d 852, 854 (7th Cir. 1937) (noting congressional intent "to avoid accrual of avoidable damages to one not certain of his rights and to afford him an early adjudication without waiting until his adversary should see fit to begin suit, after damage had accrued.").

To prevent abuses, the Act grants substantial discretion to district courts to decline to hear the declaratory relief action, even when an actual controversy and federal jurisdiction exist. See Government Employees Ins. Co. v. Dizol, 133 F.3d 1220, 1222-23 (9th Cir. 1998) (en banc). "'The Declaratory Judgment Act was an authorization, not a command. It gave the federal courts competence to make a declaration of rights; it did not impose a duty to do so.'" Amerada Petroleum Corp. v. Marshall, 381 F.2d 661, 663 n.1 (5th Cir. 1967) (quoting Public Affairs Assoc., Inc. v. Rickover, 369 U.S. 111, 112

(1962)); see also Wilton v. Seven Falls Co., 515 U.S. 277, 286 (1995) ("Since its inception, the Declaratory Judgment Act has been understood to confer on federal courts unique and substantial discretion in deciding whether to declare the rights of litigants."). In particular, the Act provides:

> In the case of an actual controversy within its jurisdiction, . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

28 U.S.C. 2201(a) (emphasis added).

It is well settled that "[w]here there is a suit pending between the same parties . . . in which the issue of [patent] infringement may be properly adjudicated, discretionary dismissal [of a declaratory judgment action] is appropriate." TRW, Inc. v. Ellipse Corp., 495 F.2d 314, 322 (7th Cir. 1974); see Abbott Labs. v. Gardner, 387 U.S. 136, 155 (1967) ("A court may even in its discretion dismiss a declaratory judgment or injunctive suit if the same issue is pending in litigation elsewhere."), overruled on other grounds by Califano v. Sanders, 430 U.S. 99, 105 (1977); see also Maryland Cas. Co. v. Knight, 96 F.3d 1284, 1288 (9th Cir. 1996) ("The primary instance in which a district court should exercise its discretion to dismiss a case is presented when there exists a parallel proceeding in state court."). In such an instance, the declaratory judgment action should be dismissed in favor of the first-filed action for infringement. See, e.g., Kerotest Mfg. Co. v. C-O-Two Fire Equip. Co., 342 U.S. 180, 185-86 (1952) (affirming dismissal of declaratory judgment action in a patent case where there was already pending a suit for infringement); Genentech, Inc. v. Eli Lilly & Co., 998 F.2d 931, 937-38 (Fed. Cir. 1993) ("We prefer to apply in patent cases the general rule whereby the forum of the first-filed

case is favored, unless considerations of judicial and litigant economy, and the just and effective disposition of disputes, require otherwise."), overruled on other grounds by Wilton, 515 U.S. at 289.

Thus, for example, in Qualcomm, Inc. v. GTE Wireless, Inc., 79 F. Supp. 2d 1177, 1179 (S.D. Cal. 1999), the district court exercised its discretion to dismiss sua sponte a declaratory judgment action for a declaration of patent invalidity and noninfringement on the ground that the same patent was at issue in a separate (and earlier filed) action before the same court involving the same parties.[4] See also TRW, Inc., 495 F. 2d at 322-23 (affirming dismissal of declaratory judgment action for declaration of patent invalidity filed by a manufacturer where patent infringement action was pending between the patent owner and those in privity with the manufacturer).

Dismissal is appropriate even where the declaratory relief action involves a modified version of the product that is directly the subject of the first-filed suit. Thus, in McGraw-Edison Co., 362 F.2d at 344-45, the Ninth Circuit affirmed the dismissal of a declaratory judgment action that was filed subsequent to an infringement action pending in another district court. The court rejected the argument that the declaratory judgment action should not be dismissed because it involved a modified version of the product at issue in the first filed litigation. Id. at 344. The court reasoned that the modified product-

---

[4] Pall attempts to distinguish the Qualcomm case on the basis that it involved two suits on identical products. See Opp. at 14. However, as discussed above, the Second Action involves the same products at issue in the First Action. In particular, the Second Action involves the same EZD-2 Retrofit Manifolds that are the subject of the Preliminary Injunction in the First Action. Additionally, Pall's Counterclaim and Mykrolis's Complaint in the First Action are not limited to particular products. They each extend to Pall's fluid separation devices, and there can be no doubt that the EZD-3 products are fluid separation devices.

-although commercially introduced subsequent to the issuance of an injunction in the first case--might be the basis for a finding of contempt by the court in the first filed case.[5] Id.

The cases cited by Pall in its Opposition to Mykrolis's original Motion To Dismiss in support of maintaining the Second Action are inapposite. Each of those cases involved products that were modified after a final determination on the merits in the first filed action. See KSM Fastening Sys., Inc. v. H.A. Jones Co., Inc., 776 F.2d 1522, 1523-24 (Fed. Cir. 1985) (holding that contempt hearing was inappropriate vehicle to address a product modified more than two years after the close of the first action)[6]; International Communication Materials, Inc. v. Ricoh Co., Ltd., 108 F.3d 316, 317-318 (Fed. Cir. 1997) (second action on modified product brought more than one year after issuance of a permanent injunction in first action); Decade Indus. v. Wood Tech., Inc., 145 F. Supp. 2d 1075, 1076 (D. Mn. 2001) (court did not address appropriateness of second filed action for a declaratory judgment where second suit involved claims related to an additional product and an additional patent not at issue in the first action); Simmons Fastener Corp. v. Illinois Tool Works, Inc., 630 F. Supp. 1310, 1311 (N.D.N.Y. 1986) (holding that

---

[5] Pall incorrectly argues that the McGraw-Edison case is inapt because the patentee in the McGraw-Edison case had brought both the first and second actions. See Opp. at 13. In fact, in dismissing the second action, the Court in McGraw-Edison addressed the declaratory judgment counterclaim brought by the consumer in the second action, not the patentee's affirmative claim of infringement. The Court held that dismissal of the declaratory judgment counterclaim was appropriate even though the declaratory judgment counterclaim involved a modified product. 362 F.2d at 344.

[6] Pall's summary of the KSM case mischaracterizes its holding by suggesting that the case held that summary contempt proceedings are always inappropriate to resolve new issues of fact and open questions of infringement, and that "new proceedings" are required to address infringement with respect to a modified product. Rather, the court in KSM held that contempt proceeding was not appropriate to enforce a two year old consent judgment in a closed case, where the particular legal and factual issues involved were not suitable for summary disposition. See 776 F.2d at 1531.

contempt proceeding was inappropriate vehicle to address modified product after judgment entered on first filed action). In contrast to the present case, none of the cases cited by Pall involved a pending action at such an early stage where a preliminary injunction had just been granted, and where all the legal and factual issues raised in the second action were already at issue, and could be most efficiently resolved, within the context of the first action. In the present situation, the products at issue in the Second Action--the EZD-3 products--are already encompassed by the First Action, and that First Action is still pending before this Court.

Thus, in the present action, dismissal of the Second Action is appropriate. As in Qualcomm and McGraw-Edison, the Second Action involves the same patents, the same parties, and the same products, and it is encompassed within Pall's Counterclaim in the First Action. While the Second Action is confined to Pall's EZD-3 products, Pall's Counterclaim in the First Action references Pall's fluid separation devices generally, which includes the original EZD-2 products as well as the revised EZD-2 (i.e., the EZD-New) and the EZD-3 products. Moreover, the EZD-New and EZD-3 products have already been the subject of discovery requests and a substantial amount of pleadings in the First Action, and at least two of Pall's so-called EZD-3 products were expressly enjoined by the Court in the First Action.

Citing the website for a cultural dictionary on the meaning of the phrase "it takes two to tango," Pall erroneously argues that, because it proposes to remove the tab from its filter capsules, its infringing EZD-2 Retrofit Manifolds no longer infringe.[7] Opp. at 12.

---

[7] Though Pall's lengthy discussion of this point in its Opposition goes more to the merits of the infringement question than to the relevant issue of whether the Second Action should be maintained, a brief examination of the paucity of Pall's position on

476954_1.DOC                                                          -14-

Cultural references aside, the case law is clear that an accused device may be found to infringe if it is reasonably capable of performing the claimed function, even though it may also be capable of noninfringing modes of operation. See Intel Corp. v. U.S. Int'l Trade Comm'n, 946 F.2d 821, 832 (Fed. Cir. 1991) (holding that accused EPROM devices infringed because they were capable of operating in an infringing mode, even though the devices were not sold to customers in that mode and no customer was ever told how to convert the device so that it operated in the infringing mode); Huck Mfg. Co. v. Textron, Inc., 187 U.S.P.Q. 388, (E.D. Mich. 1975) ("The fact that a device may be used in a manner so as not to infringe the patent is not a defense to a claim of infringement against a manufacturer of the device if it is also reasonably capable of a use that infringes the patent.") Thus, the fact that Pall may be modifying its new filter capsules so that it will not subsequently supply filter capsules that can be used by its customers to employ the "means for positioning" in Pall's products does not magically make those products noninfringing; in particular, they continue to infringe at least Claim 1 of the '907 Patent, which claims a manifold with, *inter alia*, means for positioning. And, certainly modification of the filter capsules does not transform the infringing EZD-2 Retrofit Manifolds--which Pall does not propose to modify at all-- into "new" or even "modified" products that would even begin to justify the incredible waste of judicial resources and time represented by this Second Action.

In sum, the Second Action adds nothing to Pall's Counterclaim or to the First Action. It is a thinly veiled collateral attack on this Court's April 30, 2004 Order and a waste of judicial resources. See, e.g., TRW, Inc., 495 F.2d at 322-23 ("It would be

---

infringement further illustrates the necessity for a dismissal of this superfluous and

perverse to permit the Declaratory Judgment Act, designed to effectuate lawsuits, to be manipulated into a device allowing the avoidance of real legal involvement in an earlier pending suit between the manufacturer's customers and the patent owner, while permitting the manufacturer subsequently to collaterally attack aspects of the decision unfavorable to its position."). As such, it should be dismissed.[8]

## CONCLUSION

Based on the foregoing, Mykrolis respectfully requests that the Court dismiss the Second Action.

>MYKROLIS CORPORATION
>By its attorneys,
>
>_____
>Susan G. L. Glovsky BBO#195880
>John L. DuPré BBO# 549659
>Kevin T. Shaughnessy BBO# 648653
>Hamilton, Brook, Smith & Reynolds, P.C.
>530 Virginia Road, P.O. Box 9133
>Concord, Massachusetts 01742-9133
>(978) 341-0036
>
>_____
>John T. Montgomery BBO# 352220
>Dalila Argaez Wendlandt BBO# 639280
>Ropes & Gray
>One International Place
>Boston, Massachusetts 02110
>(617) 951-7000

June 1, 2004

---

wasteful Second Action.

[8] Even if the Court declines to exercise its discretion to dismiss the Second Action, the Court should consolidate the two cases pursuant to Rule 42(a) of the Federal Rules of Civil Procedure because the cases involve common questions of law and fact.

## Certificate of Service

I hereby certify that on June 1, 2004, a true and correct copy of the Memorandum of Law in Support of Defendant's Motion to Dismiss the Amended Complaint was served upon counsel for the plaintiff Pall Corporation in the manner indicated below:

*Via Hand*

Gary R. Greenberg
Greenberg Traurig LLP
One International Place, 20th Floor
Boston, MA 02110

*Via Facsimile with Confirmation via First Class Mail*

Mark E. Phelps
Leydig, Voit & Mayer, Ltd.
Two Prudential Plaza, Suite 4900
Chicago, IL 60601-6780

/s/ Susan G. L. Glovsky
Susan G. L. Glovsky