IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| PALL CORPORATION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No: 04-CV-10887 GAO |
| | ) | |
| MYKROLIS CORPORATION, | ) | Oral Argument Requested |
| | ) | |
| Defendant. | ) | |

**PALL CORPORATION'S OPPOSITION TO MYKROLIS CORPORATION'S
MOTION TO DISMISS THE AMENDED COMPLAINT**

I.   **INTRODUCTION AND SUMMARY**

Pall's EZD-3 filter assemblies are not at issue in Civil Action No. 03-10392-GAO ("the '10392 action"). In the '10392 action, Mykrolis argued, and the Court held, that the claims require the filter capsule to "automatically" align within the manifold. Pall did not dispute that the EZD-2 filter assemblies at issue in the '10392 action performed "automatic" alignment as that term was employed to call for mechanical alignment of all of the ports before engagement of the connectors. Pall's EZD-3 filter assemblies, however, eliminate any "automatic" alignment and require the operator to manually align the filter capsule within the manifold, thus avoiding infringement of either the '770 or '907 patent. The issue of noninfringement by manual alignment was not at issue in the '10392 action.

Rather than conceding noninfringement, Mykrolis' argues that Pall's EZD-3 filter assemblies are nonetheless capable of infringing the '907 patent.[1] However, Mykrolis'

---

[1] It is telling that Mykrolis' memorandum omits any reference to infringement of the '770 patent by Pall's EZD-3 filter assemblies. See Mykrolis' memorandum at p. 15 ("[Pall's products] continue to infringe at least claim 1 of the '907 patent ..."). Mykrolis presumably recognizes that any such argument would fly in the face of Mykrolis' arguments with respect to, and the Court's construction of, the '770 patent. For reasons discussed below, that is also the case with the '907 patent.

argument ignores the fact that Pall is the sole provider of filter capsules for its manifolds. Pall has removed the alignment tab from the bottom of its prior EZD-2 filter capsules to create its EZD-3 capsules, and has further modified a version of its manifolds such that none of Pall's EZD-3 filter assemblies is capable of "automatic" alignment. Pall's EZD-3 filter assemblies are thus incapable of infringing either of the Mykrolis patents.

Pall is entitled to a prompt adjudication that its EZD-3 filter assemblies do not infringe either of the Mykrolis patents. Pall supports consolidation of the instant action with the '10392 action so long as Pall will be able to expeditiously adjudicate the issues of validity and infringement with respect to the EZD-3 filter assemblies under Pall's and the Court's respective claim constructions while Pall appeals the Court's claim construction and preliminary injunction in the '10392 action.

## II. PALLS' EZD-3 FILTER ASSEMBLIES RAISE AN ENTIRELY NEW NON-INFRINGEMENT DEFENSE – MANUAL ALIGNMENT OF THE FILTER CAPSULE RELATIVE TO THE MANIFOLD

Pall sets forth below a discussion of the different alignment mechanisms employed in Pall's EZD-2 filter assemblies and its new EZD-3 filter assemblies. Pall also attaches hereto a CD (Exhibit 1) containing animations contrasting the structure and manner of operation of Pall's EZD-2 and EZD-3 retrofit and stand-alone manifolds, along with instructions for operation of the CD and narratives (Exhibit 2) keyed to the time markings of the animations.[2]

### A. The EZD-2 Filter Assemblies That Were the Subject of the '10392 Action and Pall's Original Declaratory Judgment Complaint

Pall's original EZD-2 filter assemblies and redesigned EZD-2 filter assemblies that were the subject of Pall's original declaratory judgment complaint in the '10887 action include a filter capsule and either a so-called "retrofit" or "stand-alone" manifold. In both versions of the redesigned EZD-2 filter assemblies, as well as in both versions of the enjoined EZD-2 filter

---

[2] The CD and instructions with narratives are identical to those submitted as Exhibits 2 and 3, respectively, to Pall's Report on Compliance with the Preliminary Injunction filed May 28, 2004 in the '10392 action.

assemblies, the filter capsule acts in conjunction with the manifold to mechanically align the fluid connectors of the filter capsule and manifold.[3]

### 1.    The EZD-2 Filter Assemblies With A "Retrofit" Manifold

In Pall's "retrofit" manifolds,[4] the alignment of the fluid connectors on the filter capsule with those on the manifold is accomplished by the interaction of an alignment tab on the bottom of the filter capsule with a mating slot in the lower surface of the elevating platform of the manifold.

 

Alignment tab on EZD-2 capsule mated with alignment slot on EZD-2 retrofit manifold

The operator first inserts the filter capsule into the elevating platform and manually rotates the filter capsule until the tab on the bottom of the filter capsule mates with the slot in the lower surface of the elevating platform of the manifold. Once the tab is mated with the slot, the fluid connectors at the top of the filter capsule are aligned with the fluid connectors on the manifold. The slot and tab combine to ensure that the filter capsule is held in the aligned condition. The operator then moves the handle downward to elevate the platform to engage the fluid connectors.

---

[3]    The redesigned EZD-2 filter assemblies differ from the enjoined EZD-2 filter assemblies in the movement of the pins and linkages that function to maintain the filter capsule in sealing engagement with the manifold during operating conditions. The redesigned mechanism is also found in Pall's EZD-3 filter assemblies and is further confirmation that Pall's EZD-3 filter assemblies do not infringe the Mykrolis patents under the Court's claim construction.

[4]    This discussion is applicable to both the retrofit manifolds that are the subject of the '10392 action and the redesigned EZD-2 retrofit manifolds that were the subject of Pall's original declaratory judgment complaint in this action.

3

**2.  The EZD-2 Filter Assemblies With A "Stand-Alone" Manifold**

The EZD-2 filter assemblies with "stand-alone" manifolds[5] have two mechanisms that cooperate to assure the proper alignment of the fluid connectors of the filter capsule and manifold. The first mechanism is a slot to receive the tab on the bottom of the filter capsule, the same as with the retrofit manifolds.



Alignment tab on EZD-2 capsule aligned with alignment slot on EZD-2 stand-alone manifold (before mating)

Alignment tab on EZD-2 capsule mated with alignment slot on EZD-2 stand-alone manifold

The second alignment mechanism in Pall's EZD-2 filter assemblies with stand-alone manifolds is a notch at the rear of the elevating platform.




Views showing ridge on EZD-2 filter capsule mating with notch on EZD-2 manifold

---

[5]  This discussion is applicable to both the stand-alone manifolds that are the subject of the '10392 action and the redesigned EZD-2 stand-alone manifolds that were the subject of Pall's original declaratory judgment complaint in this action.

4

When the filter capsule is moved into place, this notch receives the fluid inlet ridge on the filter capsule opposite the handle thereby assisting in aligning the capsule. The notch and ridge combine with the tab and the slot to ensure that the filter capsule cannot move relative to the manifold such that the fluid connectors are, and remain, aligned.

### B. The EZD-3 Filter Assemblies Developed Since the April 30, 2004 Order

In response to Mykrolis' urging, the Court relied on an "automatic" alignment feature in the claims of the patents in suit as "an important aspect of the Mykrolis invention" that distinguished the claims over the Ogden prior art patent. Order at pp. 17 and 18. As a result of this finding, any infringing filter assembly must include a mechanism for so-called "automatic" alignment. *See, e.g., Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 29 (1997) (stating that every claim limitation or its equivalent must be found in the accused device in order to find infringement). In Pall's EZD-3 filter assemblies, however, a significant modification to the filter capsule and another significant modification to Pall's EZD-2 stand-alone manifold combine to eliminate any arguable "automatic" alignment or mechanical feature that functions to mechanically align all of the fluid connectors.[6] The elimination of any "automatic" alignment in Pall's EZD-3 retrofit and stand-alone filter assemblies is addressed separately below.

#### 1. The EZD-3 Filter Assemblies With A Retrofit Manifold

In the EZD-3 filter assemblies with a retrofit manifold, the elimination of the alignment tab on the bottom of the filter capsule is sufficient to eliminate any arguable "automatic" mechanical alignment.

---

[6] As a result of the different alignment mechanisms in the EZD-2 retrofit and stand-alone manifolds (as discussed above), the modification to the capsule alone with no modification to the EZD-2 retrofit manifold was sufficient to eliminate any so-called "automatic" alignment.



Retrofit manifold (no distinction between EZD-2 and EZD-3 manifolds) about to receive an EZD-3 filter capsule

Removal of the alignment tab from the filter capsule permits a substantial degree of rotational freedom within the receptor on the retrofit manifold, requiring the operator to manually align the connectors of the filter with the connectors of the manifold.

 

Views showing EZD-3 filter capsule misaligned both counter-clockwise and clockwise

Hence, removal of the alignment tab from the Pall filter capsule used with EZD-3 retrofit manifolds eliminates any arguable "automatic alignment" in the context of the patent claims as construed by the Court. This avoids infringement of both Mykrolis patents.

### 2. The EZD-3 Filter Assemblies With A Stand-Alone Manifold

The elevating platform on the stand-alone manifold of the EZD-3 filter assemblies eliminates the notch at the back of the elevating platform that received a ridge on the filter capsule to help align the fluid connectors in the EZD-2 filter assemblies. Removal of the notch in the elevating platform together with the removal of the tab on the bottom of the filter capsule combine to eliminate mechanical alignment and permit a substantial degree of rotational freedom of the filter capsule within the receptor.

6


Plan view of lower portion of elevating platform of EZD-3 stand-alone manifold


Plan view showing range of motion of EZD-3 capsule in EZD-3 stand-alone manifold

The notch on the upper finger extending from the rear flange of the EZD-3 stand-alone manifold is worthy of note. As shown in the right figure above, that notch permits the maximum degree of rotational freedom of the filter capsule in the receptor. Hence, as contrasted with the notch in the EZD-2 manifold (illustrated above in Section II.A.2), which assisted alignment, the notch in the EZD-3 manifold *expands the range of misalignment*, further ensuring the need for the operator to manually align the capsule with the manifold.


Plan view showing EZD-3 capsule manually aligned in EZD-3 stand-alone manifold


The tab at the bottom left portion of the EZD-3 stand-alone manifold is also worthy of note. This tab permits the operator to visually align the filter capsule, but does not contribute to any mechanical or "automatic" alignment of the fluid connectors on the filter capsule and the manifold. Pall's EZD-3 stand-alone manifold and EZD-3 filter capsule combine to clearly eliminate any arguable "automatic" alignment in the context of the patent claims as construed by the Court. Again, this avoids infringement of both Mykrolis patents.

## III. ARGUMENT

### A. The Declaratory Judgment Action Is Not Duplicative

The elimination of any "automatic" alignment features in Pall's EZD-3 filter assemblies clearly relate to the claimed features of the Mykrolis patents. In the '10392 action, Mykrolis argued, and the Court held, that the claims of the '770 and '907 patents were limited to "automatic" alignment, which is an "important" claimed aspect of the patents. Order at pp. 17-18. Indeed, the "automatic" alignment was found to be the *only* feature that distinguished the Mykrolis patents from the prior art Ogden patent. *Id.* Hence, far from being merely a colorable change, the elimination of the "automatic" alignment features in Pall's EZD-3 filter assemblies is a highly significant modification in the context of the patent claims as construed by the Court.

Under these circumstances, the courts have held that the modified product is properly the subject of a new action. *See, e.g., KSM Fastening Systems v. H.A. Jones Co.*, 776 F.2d 1522, 1531-32 (Fed. Cir. 1985) (holding that summary contempt proceedings are inappropriate to resolve new issues of fact and open questions of infringement and new proceedings are appropriate to address infringement with respect to the modified product), *citing California Artificial Stone Paving Co. v. Molitor*, 113 U.S. 609, 618 (1885) (proceeding by way of a new suit "is by far the most appropriate one where it is really a doubtful question whether the new process adopted is an infringement or not"); *see also International Communication Materials Inc. v. Ricoh Co.*, 108 F.3d 316, 318-19 (Fed. Cir. 1997) (upholding district court's denial of preliminary injunction in second filed declaratory judgment action because the modified product did not fall within the adjudicated scope of the claims); *Decade Industries v. Wood Technology*, 145 F.Supp.2d 1075, 1079-80 (D.Mn. 2001) (finding contempt proceedings inappropriate for modified device but consolidating the first action with a new declaratory judgment action for the modified device); and *Simmons Fastener Corp. v. Illinois Tool Works*, 630 F.Supp. 1310, 1311 (N.D.N.Y. 1986) (finding contempt proceedings inappropriate and stating that any further action regarding the modified product must occur through a new complaint).

8

Mykrolis' criticisms of the above cases (Mykrolis Memorandum at p. 13) are inapposite. Mykrolis' criticisms are premised on the fact that none of the cases cited by Pall involve a pending action where all of the legal and factual issues raised in the second action were already at issue in the first action. Yet, Mykrolis ignores the fact that the issue of infringement by the manual alignment of Pall's EZD-3 filter assemblies was never raised in the first action. Accordingly, Mykrolis' criticisms are based on a false premise.

### B.  Mykrolis' Complaint Does Not Expand To Later-Developed Products

Mykrolis engages in word games to suggest that Pall's recently-developed EZD-3 filter assemblies are already at issue in Mykrolis' complaint and Pall's counterclaim in the '10392 action. Mykrolis cites to the generic "fluid separation devices" language that Mykrolis employed in its complaint and that Pall employed in its counterclaim as confirmation that the recently-developed EZD-3 filter assemblies are actually already at issue in the '10392 action. Mykrolis Memorandum, p. 12, n.4. This argument ignores the basic proposition that a complaint, including a declaratory judgment complaint, only encompasses actions as of the date the complaint is filed. *See, e.g.*, F.R.Civ.P. 15(d). Mykrolis' suggestion that the use of language that, in hindsight, arguably applies to later-developed products[7] somehow results in an ever-evolving complaint is simply not the law. Mykrolis cites no authority for this proposition. If a new product is introduced, that product is not at issue until a complaint is filed that covers it. *Id.* Pall's newly-developed EZD-3 filter assemblies are not at issue in the '10392 action; they are properly at issue – for the first time – in this declaratory judgment action.

### C.  Mykrolis Argued And The Court Found That The Claims Cover Filter Assemblies, Not Manifolds Alone

Mykrolis continues to assert – incorrectly – that the Court found that Pall's *manifolds*, as contrasted with Pall's *filter assemblies* (*i.e.*, the combination of a manifold and a filter capsule)

---

[7] Pall is a specialty filtration company. Virtually everything it has manufactured and is likely to manufacture in the future can be described as a "fluid separation device".

9

infringed the Mykrolis patents. *See* Mykrolis' Memorandum at pp. 14-15. It did not. At the outset of the Order, the Court characterizes the Mykrolis invention of the '770 and '907 patents as "a separation system having a quick-connect separation module (filter module) which allows for a fluid tight engagement between sets of connectors on both the separation module and a fluid connector member (manifold), and permits quick and easy change out of the filter." Order at 2. The Court's infringement analysis is directed to Pall's "PhotoKleen™ EZD-2 Filter Assembly (the 'EZD-2' or 'Pall device')." *Id.* The Court characterizes the EZD-2 device as "a fluid separation device which, like the Mykrolis invention, positions and maintains the filter module's connectors in fluid tight engagement with the connectors on a manifold and allows for quick and easy change-out of the filter capsule." *Id. See also* the discussion of the EZD-2 filter assemblies at page 14, first paragraph, wherein the Court discusses infringement of the '770 and '907 patents and references both the manifolds and the filter capsules.

The Court's reference to filter assemblies and to both the manifold and filter capsules is fully consistent with claim 3 of the '770 patent, which is expressly directed to a "fluid separation apparatus" and expressly calls for both "a disposable separation module" and "a fluid connection member." It is also fully consistent with Mykrolis' argument regarding, and the Court's construction of, claim 1 of the '907 patent. Although the preamble of the claim suggests that the claim is directed to a manifold, at Mykrolis' urging, the Court construed the claim language to call for, *inter alia*, means for positioning and aligning the inlet and outlet ports of a capsule. Order at 12. This construction mandates that the manifold and filter be assessed in cooperation with each other to determine whether the manifold in fact has the requisite means to position and align the filter capsule.

### D.   Mykrolis Reads The Injunction Out Of Context

Mykrolis clings to a clearly unintended reading of the injunction that expressly enjoins "the product now being sold under the name PhotoKleen™ EZD-2 Filter Assembly, or any

colorable imitation thereof,"[8] even though, as of the April 30 date of the Order, Pall was selling its new redesigned-locking EZD-2 products that the Court could not have intended to address. Pall had initially sought clarification of that point – namely that the Court had obviously intended to enjoin the products at issue during the August 2003 preliminary injunction hearing and *not* products first introduced months later, in February 2004,[9] but withdrew that request because Pall thought it was no longer necessary for the Court to clarify that point.[10] Pall did not expect that Mykrolis would engage in a word game suggesting otherwise. Because it has now become a pivotal point in Mykrolis' motion to dismiss, however, Pall renews its request that the Court clarify the preliminary injunction. Specifically, Pall requests that the Court confirm that the "product now being sold …" language in the Order was expressly intended to refer to Pall's PhotoKleen™ EZD-2 Filter Assemblies that were at issue during the August 2003 preliminary injunction hearing and not Pall's redesigned-locking EZD-2 filter assemblies that Pall first introduced in February 2004 and certainly not Pall's EZD-3 filter assemblies developed since April 30, 2004.

### E. Pall's EZD-3 Filter Assemblies Are Not Capable Of Infringing The Patents

As Mykrolis argued and as construed by the Court, the claims require "automatic" alignment of the filter capsule within the manifold. Order at 8-9 ('770 patent) and at 12 ('907) patent. As explained above, Pall's EZD-3 filter assemblies are incapable of "automatically" aligning the EZD-3 filter capsules. Pall is the only U.S. supplier of EZD-3 filter capsules that

---

[8] Pall notes that the "now being sold" phraseology of the quoted language from the April 30 Order was that proposed by Mykrolis in its original motion filed in March 2003, when Pall's original EZD-2 filter assemblies were the only ones being sold.

[9] *See* Pall Corporation's Status Report and Request for Clarification of the Preliminary Injunction Order filed May 7, 2004 in the '10392 action, at pages 1-2 and 5-6.

[10] The reason that it no longer seemed necessary was that Pall had switched to its EZD-3 filter assemblies which weren't even developed until after the April 30, 2004 Order and were not even arguably filter assemblies "now being sold" as of April 30, 2004. *See* Pall Corporation's Second Status Report and comments on its Request for Clarification of the Preliminary Injunction filed May 25, 2004 in the '10392 action, at pages 2-3.

operate with the EZD-3 manifolds. Pall's EZD-2 filter capsules with alignment tabs are no longer available in the United States, and Pall is replacing any EZD-2 capsules in the field with EZD-3 capsules. Exhibit 3, Mesawich Declaration, ¶¶ 8(c)-(g).[11] These actions combine to eliminate any possibility of "automatic" alignment of the EZD-3 filter capsules within the EZD-3 manifolds.

Mykrolis summarily argues that Pall's EZD-3 filter assemblies are nonetheless "capable" of infringement of the '907 patent.[12] Mykrolis Memorandum at p. 15. Mykrolis does not explain how it foresees this might happen. Perhaps Mykrolis believes that a customer might somehow reconstruct the EZD-3 filter capsules to restore the removed alignment tabs. Not only would such an argument be speculative, but it would also go against common sense. Common sense mandates that a customer would spend far more time and effort trying to restore alignment tabs to Pall's EZD-3 filter capsules than simply manually aligning the filter capsules within the manifolds. In any event, it is not reasonably foreseeable that anyone is going to try to modify Pall's filters. This renders the *Huck* case cited by Mykrolis inapposite.

Nor does the *Intel* case support Mykrolis' "capable of infringing" argument. In *Intel*, the claim terms "programmable" and "when selected" were held to expressly cover those devices that have the structural components necessary to perform a claimed function even though the function is never actually performed. 946 F.2d at 832. More analogous to this case than *Intel* is *High Tech Medical Devices v. New Image Industries*, 49 F.3d 1551 (Fed. Cir. 1995). In *High Tech*, the claims called for a camera to be "rotatably coupled" to a housing. In the accused device, two set screws prevented the camera from rotating relative to the housing. In denying a motion for a preliminary injunction the Court distinguished the *Intel* case and found no likelihood of infringement by the device with the set screws. 49 F.3d at 1554. Significantly, this

---

[11] This is the same Mesawich declaration, with exhibits, that was attached as Exhibit 1 to Pall's Report on Compliance with the Preliminary Injunction filed May 28, 2004 in the '10392 action.
[12] See footnote 1.

12

was held to be the case even though the operator could simply loosen the set screws to result in a rotatably-coupled relationship. *Id.* at 1555-1556.

This case is far more compelling than *High Tech*. Pall (1) has stopped selling EZD-2 filter capsules with tabs in the U.S. and is only selling EZD-3 filter capsules without alignment tabs, (2) is only selling EZD-3 manifolds in the U.S. with EZD-3 filters, (3) is replacing earlier versions of stand-alone manifolds in the U.S. with its new EZD-3 stand-alone manifolds, and (4) is replacing any unused (EZD-2) tabbed filters that were already in the field in the U.S. at the time of the preliminary injunction with EZD-3 tabless filters. Exhibit 3, Mesawich Declaration, ¶¶ 8(c)-(g). Hence, there is nothing the customer can do to effect any alignment interaction between the EZD-3 manifolds and the EZD-3 filter capsules. This removes any possibility of infringement by the EZD-3 filter assemblies.

### F.   Pall's Filing of This Declaratory Judgment Action is Proper

The purpose of the Declaratory Judgment Act "is to afford an added remedy to one who is uncertain of his rights and who desires an early adjudication thereof without having to wait until his adversary should decide to bring suit, and to act at his peril in the interim." *McGraw-Edison Co. v. Preformed Line Products Co.*, 362 F.2d 339, 342 (9th Cir. 1966), quoting *Shell Oil Co. v. Frusetta*, 290 F.2d 689, 691-92 (9th Cir. 1961). As Professor Moore has stated, the decision on a motion to dismiss should be based on two factors: (1) "whether a declaratory judgment would serve a useful purpose 'in clarifying and settling the legal relations in issue'" and (2) "whether it would 'terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding.'" *Id.* at 342, quoting 6 MOORE, FEDERAL PRACTICE § 57.08[6] at 3042 (2d ed. 1965). In filing this declaratory judgment action, Pall seeks to remove as expeditiously as possible the cloud of uncertainty that now hangs over Pall's EZD-3 filter assemblies not addressed in the original action. Pall's filing of this declaratory judgment action therefore serves the purposes of the act.

Mykrolis relies principally on the *McGraw-Edison* and *Qualcomm* cases to support its position that Pall's declaratory judgment action should be dismissed as an abuse of the Declaratory Judgment Act. However, both of these cases are inapt.

In *McGraw-Edison*, the patentee obtained an injunction from the Ohio district court against the manufacturer and sought to have the manufacturer charged with contempt with respect to a modified device. *McGraw-Edison*, 362 F.2d at 340-41. The patentee also filed suit in the California district court against a customer of the manufacturer with respect to the modified device, and the customer counterclaimed for a declaration of noninfringement with respect to the modified device. *Id.* The court dismissed the customer's counterclaim because the issue of infringement was already pending in the Ohio action with respect to the modified product and "the issue first should be determined in the Ohio court, where any judgment will be binding upon the manufacturer of the product" and any customer who knowingly aids and abets the manufacturer in violation of the injunction. *Id.* at 344. The issues addressed in *McGraw-Edison* are absent here.

In *Qualcomm*, the patentee filed suit against the manufacturer and, three months later, the manufacturer filed a declaratory judgment action against the patentee in the same court. *Qualcomm, Inc. v. GTE Wireless, Inc.*, 79 F.Supp.2d 1177, 1179 (S.D.Cal. 1999). Both actions involved identical parties, patents and products. No issue was raised by either party with respect to a modified product. The only issue was who should be the plaintiff and who should be the defendant. *Id.* at 1178. The court held that the patentee should be the plaintiff because the patentee's action was first filed and should be the forum for adjudication. *Id.* at 1179. The issues addressed in *Qualcomm* are absent here.

Unlike the cases relied upon by Mykrolis,[13] Pall is not engaged in forum shopping and is not racing to the court house over an identical product in a parallel action. Rather, Pall is seeking to remove the cloud of infringement from the new EZD-3 filter assemblies that were not at issue in the original action. The Court's memorandum and order did not address the question of infringement with respect to the elimination of the "automatic" alignment features in Pall's new EZD-3 filter assemblies. Indeed, the product modifications have only been implemented since the Court's order finding "automatic" alignment to be an important feature of the claims of the Mykrolis patents. Hence, Mykrolis' reliance on *McGraw-Edison* and *Qualcomm*, as well as the other cases cited in its memorandum, is misplaced.

## IV. CONCLUSION

For at least the reasons set forth above, Mykrolis' motion to dismiss Pall's Amended Complaint should be denied. Pall suggests that, in view of the product developments and the number of filings in this action and in the '10392 action since the Court's April 30, 2004 Order, an oral hearing on this motion to address any questions the Court might have would be beneficial.

---

[13] The other cases cited in Mykrolis' memorandum (*TRW, Abbott Labs., Maryland Cas. Co., Kerotest,* and *Genentech*) are also inapt. All involved parallel actions involving identical products, mostly in separate jurisdictions.

## REQUEST FOR ORAL ARGUMENT

Pursuant to Local Rule 7.1(D), Pall Corporation hereby requests oral argument on MYKROLIS CORPORATION'S MOTION TO DISMISS THE AMENDED COMPLAINT.

Date: June 15, 2004

                        Gary R. Greenberg, BBO #209420
                        Louis J. Scerra, Jr., BBO #543600
                        Greenberg Traurig, LLP
                        One International Place
                        Boston, MA 02110
                        (617) 310-6000

                        H. Michael Hartmann
                        Mark E. Phelps
                        Jeremy C. Lowe
                        LEYDIG, VOIT & MAYER, LTD.
                        Two Prudential Plaza, Suite 4900
                        Chicago, IL 60601-6780
                        (312) 616-5600

                        ATTORNEYS FOR PLAINTIFF
                        PALL CORPORATION

## CERTIFICATE OF SERVICE

I hereby certify that on June 15, 2004, a true and correct copy of PALL CORPORATION'S OPPOSITION TO MYKROLIS CORPORATION'S MOTION TO DISMISS THE AMENDED COMPLAINT was served upon counsel for Defendant Mykrolis in the manner indicated below:

### *By Facsimile and Federal Express*

Susan G.L. Glovsky
Hamilton, Brook, Smith & Reynolds, P.C.
530 Virginia Road
Concord, MA 01742
Tel: (978) 341-0036
Fax: (978) 341-0136

### *By Hand Delivery*

John T. Montgomery
Edward J. Kelly
Ropes & Gray
One International Place
Nineteenth Floor
Boston, MA 02110
Tel.: (617) 951-7000
Fax: (617) 951-7050